AUDIOVISUAL PUBLISHERS,
INC., Appellant,

v.

CENCO, INCORPORATED, Appellee.

No. 939, Docket 77-7504.

United States Court of Appeals,
Second Circuit.

Argued May 22, 1978.

Decided July 19, 1978.

Jeffrey S. Stephens, New York City, for appellant.

Leon E. Lindenbaum, Chicago,. Ill. (Walsh, Case & Coale, Chicago, Ill., Steven

J. Shore, Weil, Gotshal & Manges, New York City, of counsel), for appellee.

Before OAKES, Circuit Judge, and BLUMENFELD * and MEHRTENS,** District Judges.

OAKES, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, William C. Conner, *Judge,* denying a motion to vacate a consent judgment and direct a new trial pursuant to Federal Rule of Civil Procedure 60(b). The grounds alleged included newly discovered evidence, coercion of a "key witness" by defendants, and fraudulent and misleading representations of the defense during court-supervised settlement negotiations. Because the district court's findings of fact are amply supported by the evidence, and its denial of the request was in no sense an abuse of discretion, we affirm the judgment below.

The underlying diversity action for breach of contract involved a dispute over the payment terms and existence of an alleged contract governing appellant's production of scripted cassette tapes to be purchased and marketed by appellee and its predecessors. Appellant (AVP) filed a complaint claiming violations of a November 11, 1966, contract, and a December, 1967, contract. Appellee conceded existence of the former but denied existence of the latter. The second agreement was said by appellant's president to have disappeared. Shortly after he testified, trial was adjourned to permit settlement negotiations under the court's direction. During the negotiations appellant was told by a prior employee then working for appellee, Ms. Krueger, that she would not testify. Ms. Krueger evidently was supposed to be a witness to a missing cassette contract. On June 24, 1975, a settlement was reached

---

* Of the District of Connecticut, sitting by designation.

** Of the Southern District of Florida, sitting by designation.

requiring appellee to pay AVP a royalty (smaller than allegedly due under the contracts) on each tape previously made and to be made in the future from appellant's scripted master tapes. AVP was required to deliver the masters to appellee.

On July 2, 1975, appellant moved to vacate the stipulation of settlement under Federal Rule of Civil Procedure 59 on the ground of newly discovered evidence. The papers revealed that on June 27, 1975, AVP's president, Mr. Ferris, had discovered a copy of a September 21, 1967, agreement commingled with the company's daily mail delivery. This "agreement" had not even been alluded to in the complaint though it purported to be a 25-year royalty agreement, at quite generous terms to AVP. The motion was denied on July 10, 1975, at which time the court entered a final consent judgment.

On September 12, 1975, appellant filed a "motion for reconsideration [of] and leave to reargue" its prior motion, interpreted by the court to be a motion to vacate judgment and grant a new trial under Federal Rule of Civil Procedure 60(b). The motion was based on the discovery of the September 21 contract; new information assertedly revealing that Ms. Krueger refused to testify only after an unidentified caller threatened her with loss of her job; and alleged misrepresentations by appellees which induced appellant to agree to the settlement.[1] The court ordered an evidentiary hearing to resolve whether the September agreement was authentic (Issues 1 and 2), whether at the time of the settlement appellee's counsel were aware of the September 21 agreement (Issue 3), and whether appellee or its agents had attempted to prevent Ms. Krueger from testifying (Issue 4).

After AVP presented its evidence on Issues 3 and 4, Judge Conner held that the settlement had not been procured by appellee's wrongful withholding of information or by its intimidation of Ms. Krueger. The court found that the conversation between defense counsel and Ms. Krueger solely involved the December contract, of which appellant was already aware. The court further determined that even if a threatening phone call had been made—and Ms. Krueger said that she had taped and then erased this conversation—the causal connection between Ms. Krueger's refusal to testify and the settlement was insufficient since her testimony.

> would not be of any real significance because, as plaintiff's counsel has already stated, there was no particular reason to call Ms. Krueger to testify in any event. All she could have said is that there was an earlier draft agreement that had been signed by Mr. Devereaux, and since we didn't have any positive evidence of the precise terms of that agreement, such testimony would not have advanced us at all.

Trial Transcript at 165. On August 31, 1977, Judge Conner rendered a written memorandum and order which reiterated his prior rulings on the fraud and coercion allegations. He then denied relief on the ground of newly discovered evidence because appellant had not satisfied the court of the authenticity of the September 21, 1967, agreement (Issue 1).[2]

---

1. Appellant referred to two instances of counsel's misconduct. First it alleged that Ms. Krueger advised defense counsel of the September 21 agreement during a taped telephone conversation on the eve of trial, and that they fraudulently withheld this information from the court. Second, AVP alleged that appellee had implied during the settlement discussions that it would continue to market AVP's tapes since it insisted on delivery of all master tapes then in AVP's possession. In fact, at least 50% of the tapes were not listed in appellee's 1975 catalog.

2. The judge discounted the testimony of appellant's four witnesses, "who described, in remarkable and uniform detail, the circumstances of [the] execution a decade earlier." *Audiovisual Publishers, Inc. v. Cenco Inc.,* No. 72 Civ. 1681, at 5 (S.D.N.Y., Aug. 31, 1977). He noted that the contract was "so preposterously unfavorable" to appellee that he could not believe that a "seasoned" businessman of Mr. Devereaux's caliber would have consented to the terms. *Id.* The court compared the "slapdash" craftsmanship of the document to other agreements executed by Devereaux which, al-

Given the broad discretion afforded a trial court under Rule 60(b), and Judge Conner's detailed reasons supporting his denial of the motion, it is difficult to understand why appellant chose to pursue this appeal.[3] Appellate review of a motion to vacate a judgment under Rule 60(b) is limited to determining whether the trial court's findings of fact are clearly erroneous, *see* C. Wright & A. Miller, *Federal Practice and Procedure* § 2573, at 683 (1971), and whether the court's denial amounted to an abuse of discretion. *International Controls Corp. v. Vesco,* 556 F.2d 665, 670–71 (2d Cir. 1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); *Sampson v. Radio Corp. of America,* 434 F.2d 315, 317 (2d Cir. 1970). With regard to the "new evidence," we are unwilling to substitute our judgment for that of the trial court, especially in view of the credibility issues involved. We note, moreover, that the September 21 contract may not have been new evidence at all since appellant must or at least should have been aware of it from the time of execution if it in fact had been executed. We agree with the district court that given the state of facts known to the parties while settlement negotiations were pending, Ms. Krueger's refusal to testify had little if any effect on AVP's decision to forego a trial. In fact, counsel for AVP told the court before trial that Ms. Krueger's testimony was not important enough to justify taking her deposition. AVP has evidently abandoned the fraud claim litigated below. Appellant now urges that it was deceived by appellee into believing that there was no need to ensure a minimal royalty sum in the settlement agreement. *See* note 1 *supra.* It suffices to note that appellant does not claim that express representations of appellee's intention to continue sales were ever made. Any such implication was dispelled by the stipulation of settlement itself, which patently neither guarantees minimum royalties nor imposes an obligation on appellee to continue offering the tapes for sale. If the settlement terms are unfair, it is attributable to lack of foresight on the part of AVP.

The order is accordingly affirmed.

---

though of less moment, reflected "deliberation" and "punctilious execution." *Id.*

3. Appellee asks that its attorney's fees on appeal be charged to appellant, urging that the appeal is frivolous and brought in bad faith. We decline to do so.